1  JOHN C. MILLER, JR., #143323
   **MILLER LAW, INC.**
2  A Professional Law Corporation
   MAILING ADDRESS:
3  Post Office Box 700
   Folsom, California 95763-0700
4  Phone: (916) 351-1200
   Fax: (916) 351-1244
5  Email: jmiller@millerlawinc.com

6  Attorneys for Plaintiff

7

8              UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10 STEVE  BLAKE,  individually  and  as)      CASE NO.  2:12-cv-2061
   Successor-in-Interest to Carl Blake, deceased, )
11                                             )
              Plaintiff,                       )
12                                             )      **PLAINTIFF'S  OPPOSITION  TO**
   v.                                          )      **DEFENDANTS'   MOTION   FOR**
13                                             )      **SUMMARY   JUDGMENT/SUMMARY**
   CITY OF SACRAMENTO;                         )      **ADJUDICATION**
14 SACRAMENTO POLICE DEPARTMENT;  )
   RICK BRAZIEL, in in his official capacity as)
15 chief of police for the City of Sacramento and)
   the Sacramento Police Department;          )
16 DOE OFFICER NUMBER 1, individually and)      **DATE: March 10, 2014**
   in his official capacity as a police officer for the)  **TIME:  2:00 p.m.**
17 City of Sacramento and the Sacramento Police)  **CTRM: 5**
   Department;                                 )
18 DOE OFFICER NUMBER 2, individually and)
   in his official capacity as a police officer for the)
19 City of Sacramento and the Sacramento Police)
   Department;                                 )
20 DOE OFFICER NUMBER 3, individually and)
   in his official capacity as a police officer for the)
21 City of Sacramento and the Sacramento Police)
   Department;                                 )
22 DOE OFFICER NUMBER 4, individually and)
   in his official capacity as a police officer for the)
23 City of Sacramento and the Sacramento Police)
   Department;                                 )
24 DOE OFFICER NUMBER 5, individually and)
   in his official capacity as a police officer for the)
25 City of Sacramento and the Sacramento Police)
   Department;                                 )
26 DOES  6 – 50, inclusive, individually and in)
   their official capacities as police officers for the)
27 City of Sacramento and the Sacramento Police)
   Department,                                 )
28              Defendants.                    )
   _____)

*(left margin, vertical text)* MILLER LAW, INC.  Post Office Box 700  Folsom, California 95763-0700  (916) 351-1200

1
2

# TABLE OF CONTENTS

Page No.

3  I.    FACTUAL SUMMARY ..................................................... 1
4  II.   ARGUMENT ............................................................. 1
5  III.  CONCLUSION ......................................................... 24

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

**TABLE OF AUTHORITIES**

Page No.

**Cases**

*Anderson v. Liberty Lobby, Inc.*
477 US 242, 248-250, 106 S Ct at 2511-2514 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 25

*Aydin Corp. v. Loral Corp.*
(9th Cir. 1983) 718 F 2d 897, 902 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bingue v. Prunchak*
512 F. 3d 1169, 1177 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Braxton-Secret v. A.H. Robins Co.*
(9th Cir. 1985) 769 F2d 528, 531 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Bryant v. Hall*
(5th Cir. 1956) 238 F2d 73, 77 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Celotex Corp. v. Catrett*
477 US at 326, 106 S.Ct. 2554, 2555 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Chew v Gates*
27 F 3d 1432, 1440 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Church of Scientology of San Francisco v. Internal Revenue Service*
(9th Cir. 1983) 991 F 2d 560, 562 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*City of Canton, Ohio v. Harris*
498 US 378, 385, 390 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Cornwell v. Electra Central Credit Union*
(9th Cir. 2006) 439 F 3d 1018, 1029-1030) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*County of Sacramento v. Lewis*
523 US 833, 836, 842-843, 847, 849, 852, 853 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17

*Curnow v. Ridgecrest Police*
92 F 2d 321, 323, 325 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Eastman Kodak Co. v. Image Technical Services, Inc.*
(1992) 504 US 451, 456, 112 S. Ct. 2002, 2072, 2077 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Farmer v. Brennan*
511 US 825, 837 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Garrett v. San Francisco*
(9th Cir. 1987) 818 F 2d 1515 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Graham v. Connor*
490 U S 386, 395-396, 109 S. Ct. 1865 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19, 24

///

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

*Harris v. Itzhaki*
(9th Cir. 1999) 183 F 3d 1043, 1051 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hopkins v. Andaya*
958 F 2d 881, 884-885, 888 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . 4, 18, 20, 21, 22, 24

*International Raw Materials, Ltd. v. Assiniboine Sioux Tribes of Fort Peck Reservation*
(9th Cir. 2003) 323 F 3d 767, 774 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Irvin v. Griffin Corp.*
(11th Cir. 1987) 808 F2d 802, 807 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Martin v. Toledo Cardiology Consultants, Inc.*
548 F 3d 405, 401 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McSherry v. City of Long Beach*
584 F 3d 1129, 1135 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Menotti v. City of Seattle*
409 F 3d 1113, 1147 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Monell v. New York City Dept. of Social Services*
436 US 658, 690-692 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 13-14

*Moreland v. Los Angeles Metropolitan Police Department*
159 F. 3d 356, 372 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*
(2nd Cir. 1999) 182 F 3d 157, 160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Núñez v. Superior Oil Co.*
(5th Cir. 1978) 572 F2d 1119, 1126 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Pearson v. Callahan*
555 US 223, 225 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Porter v Osborn*
546 F. 3d 1131, 1137, 1141 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

*Reynolds v. County of San Diego*
84 F. 3d 9th 1162, 1167, 1171 ( 9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

*Sarus v. Rotundo*
831 F 2d 397, 400-401 (2nd Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Saucier v. Katz*
533 US 194, 205 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Scott v. Henrich*
39 F. 3d 912, 915 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Smith v. City of Fontana*
818 F. 2d 1411, 1417 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*///*

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1   *Texas Partners v. Conrock Co.*
    (9th Cir. 1982) 685 F 2d 1116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
2
    *Trask v. Franco*
3   (10th Cir. 2006) 446 F 3d 1036, 1042 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4   *Ulrich v. City and County of San Francisco*
    308 F. 3d 968, 984 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
5
    *United States v. One Tintoretto Painting*
6   (2nd Cir. 1982) 691 F2d 603, 606 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7   *Walker v. The City of New York*
    974 F. 2d 293, 297, 300-301 ( 2nd Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11-12
8
    *Wellington v. Daniels*
9   717 F 2d 932, 936 (4th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

10  *Wilkinson v. Torres*
    610 F 3d 546, 550, 554-555 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18-19
11

12  **Statutes**

13
    FRCP 56 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4
14  FRCP 56 (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 7

15

16  **Miscellaneous**

17  Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure Before Trial,*
    Section 14, The Rutter Group . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-6, 19, 23-25
18

19

20

21

22

23

24

25

26

27

28

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

I.

### FACTUAL SUMMARY

This action involves the wrongful shooting of the son of Plaintiff, Carl Blake (hereinafter, the "Decedent"), who was then 24years of age. Decedent was a mentally disturbed individual. At the time of his demise, defendants were aware of this fact, having responded to the subject property at which the incident occurred on at least two prior occasions.

Plaintiff had summoned defendants to a home located at 2930 Silk Court, Sacramento, California (hereinafter the "Property") following a altercation which had occurred in the home between Decedent and a guest of the home. In that altercation, Decedent had pulled the guest's hair and had scratched the face of Plaintiff. In summoning Defendants, Plaintiff again informed them of the mentally disturbed nature of Decedent.

Upon the arrival of the Defendants at the Property, there was no crime in progress. Decedent was not fleeing or attempting to flee. He was not resisting arrest. Instead, he was simply in his bedroom within the home. As a result, Plaintiff brought defendant Chesterman, together with two additional officers into the Property and showed them the location of Decedent's bedroom. He returned to the doorway of the Property where he could observe the activities therein.

Plaintiff next observed Decedent, a gaunt, frail, six-foot a three-inch, 133 pound individual, walking toward defendant Chesterman with a small steak knife held in front of him, moving the knife in a circular motion.  Plaintiff observed defendant Chesterman backing up, into the large open living room with Decedent walking slowly toward him. He observed an attempt to shoot Decedent with a taser. He then observed Decedent stop, following the demands of Defendant Chesterman. Thereafter, Plaintiff observed defendant Chesterman discharge his service revolver two times, striking Decedent in the abdomen and causing his immediate death.

II.

### ARGUMENT

**A. Summary judgment is not appropriate as to the second amended complaint.**

As this court is aware, the pleadings frame the issues for purposes of motions for summary judgment in motions for summary adjudication:

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

> "**Role of pleadings on motion for summary judgment**: Summary judgment is proper only where there is no genuine 'dispute as to any material fact'(FRCP 56 (a)). The 'materiality' of a particular factors determined by the pleadings." (Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure Before Trial,* Section 14:27.1, p. 14-10, The Rutter Group)

Here, Defendants filed a motion for summary judgment as to the FAC. However, the operative pleading is the SAC filed **after** Defendants filed and served their motion. Accordingly, at the outset, Defendants' motion fails.

**B. Defendants' motion should be denied or at a minimum continued based on lack of discovery and/or improper discovery responses.**

Plaintiff has filed a rule 56 (d) declaration requesting the Court deny Defendants' motion and/or continue it based on the lack of discovery and/or Defendants' improper discovery responses. In the context of opposing a motion for summary judgment, the opportunity of a opposing party to obtain necessary discovery to assist in opposition of that motion is critical. As stated by a leading treaties on the issue:

> "**Opportunity for discovery:** The opposing party must be given sufficient opportunity to obtain enough evidence to raise a 'genuine' dispute. The court may refuse to rule on a motion for summary judgment in order to permit additional discovery. [FRCP 56 (d) (amended 2010)." (Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure Before Trial,* Section 14:247, p. 14-96, The Rutter Group)

In fact, a summary judgment is only "proper" after there has been adequate opportunity for discovery:

> "**Limitation – adequate opportunity for discovery:** Summary judgment is proper, however, only after *adequate opportunity for discovery,* so that no serious claim can be made that the losing party was 'railroaded' by a premature motion for summary judgment. [*Celotex Corp. v. Catrett,* supra  477 US at 326,106 S. Ct. 2554, 2555]."(emphasis added) (Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure Before Trial,* Section 14:131.5, p. 14-44, The Rutter Group)

In fact, one of the most prevalent **and significant** reasons for denying a motion for summary judgment is the absence of meaningful discovery:

> "**Posture of case**: Probably, the most significant reason for hesitating granting summary judgment is that the posture of the case (e.g. discovery, party's present access to proof) indicates the ruling might be premature. [*Texas Partners v. Conrock Co.* (9th Cir. 1982) 685 F 2d 1116]" (Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure Before Trial,* Section 14:339, p. 14-116, The Rutter Group)

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1    With respect to the issue of Rule 56 (d) as a relates to additional discovery needed for

2   opposition to a motion for summary judgment, the above-referenced treaties recites:

3       **"Premature motions can be opposed under FRCP 56 (d) (former Rule 56 (f)
         declarations):** Motions for summary judgment made before the opposing party has
4       had reasonable opportunity for investigation discovery can be dealt with under rule 56
         (d). If the opposing party presents *affidavits or declarations* showing *specific reasons*
5       why it cannot present facts essential to its opposition, the court may either (1) defer
         considering the motion or deny it, (2) continue the hearing to allow additional time to
6       obtain affidavits or to take discovery, or (3) issue some other appropriate order for
         relief. [FRCP 56 (d) (amended 2010)]

7
         **Motions based on facts within moving party's possession:** Where essential facts are
8       in the moving party's exclusive possession, a Rule 56 (d) motion for continuance
         'should be granted almost as a matter of course.' [*International Raw Materials, Ltd.*
9       *v. Assiniboine Sioux Tribes of Fort Peck Reservation* (9th Cir. 2003) 323 F 3d 767, 774;
         *Trask v. Franco* (10th Cir. 2006) 446 F 3d 1036, 1042]" (italics in original)
10      (Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure
         Before Trial,* Section 14:67-14:67.1, p. 14-19, The Rutter Group)

11

12    The above-referenced treaties also sets forth the factors relevant to the inquiry under rule 56

13   (d):

14      **"Factors supporting allowing discovery:** The court will be inclined to continue or
         deny the motion to allow discovery where **one or more** of the following factors are
15      present:

16      •    the summary judgment motion was made early in the litigation before relevant
              discovery could be completed;
17
18      •    discovery has been stayed by court order [citation];

19      •    the case involves complex facts requiring additional discovery;

20      •    material fact or within the exclusive knowledge of the moving party;

21      •    discovery requests seeking material information or outstanding to the moving party;
              or
22      •    the motion raises new and unanticipated issues.

23   [*Garrett v. San Francisco* (9th Cir. 1987) 818 F 2d 1515; *Trask v. Franco* (10th Cir. 2006) 446 F 3d
     1036, 1042 –'movant's exclusive control of information is a factor favoring relief' under Rule 56 (d)
24   (amended 2010)" (emphasis added) (Schwartzer, Tashima, Wagstaffe, *California Practice Guide,
     Federal Civil Procedure Before Trial,* Section 14:115, p. 14-38, The Rutter Group)

25

26    In the present case, as set forth in the declaration of John C. Miller, Jr. in support of the Rule

27   56 (d) application, at least four of the above-referenced six factors exist herein.

28   ///

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1   Finally, although it is discretionary, courts are inclined to grant Rule 56 (d) applications:

2   **"Discretionary:** Although the matter is discretionary, a Rule 56 (d) application should
    be granted where the party opposing summary judgment 'makes a timely application
3   which specifically identifies relevant information, and where there is some basis for
    believing that the information sought actually exists.'[*Church of Scientology of San*
4   *Francisco v. Internal Revenue Service* (9ᵗʰ Cir. 1983) 991 F 2d 560, 562]" (Schwartzer,
    Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure Before Trial,*
5   Section 14:335, p. 14-114, The Rutter Group)

6   **C. Multiple genuine issues of material fact exist, mandating a denial of Defendants'**

7   **motion.**

8       Should the Court be inclined to consider and rule on Defendants' motion despite the above-

9   referenced discovery issues, it should nevertheless deny Defendants' motion based on the existence

10  of multiple genuine issues of material facts in dispute. These relate primarily to the manner in which

11  the incident occurred as well as the state of mind of defendant Chesterman.

12      As the court is aware, the basic standard for granting summary judgment is that the Court must

13  find there is "no genuine dispute as to any material fact and that the movant is entitled to judgment

14  as a matter of law." (FRCP 56 (a) ). Defendants have this initial burden: "[t]he party moving for

15  summary judgment has the burden of proving the absence of any genuine issue of material fact that

16  would allow a judgment as a matter of law. [Citation]" (*Hopkins v. Andaya* 958 F 2d 881, 884 (9ᵗʰ Cir.

17  1992).

18      The requirement that there be 'no *genuine* dispute' about a material fact is determined under

19  federal (Rule 56) standards. The federal judge must determine whether a reasonable jury could return

20  a verdict for the nonmoving party. (*Anderson v. Liberty Lobby, Inc.* 477 US 242, 248 – 250, 106 S Ct

21  at 2511). A leading treaties on the issue sets forth the test as follows:

22      **"Test:** The opposition evidence must be such that it could cause *reasonable persons
        to disagree* on whether the facts claimed by the moving party are true . . . 'enough to
23      require a jury or judge to resolve the parties' differing versions of the truth.'[*Aydin
        Corp. v. Loral Corp.* (9ᵗʰ Cir. 1983) 718 F 2d 897, 902]" (italics in original)
24      (Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure
        Before Trial,* section 14:246, P. 14-96, the Rutter Group)

25
        Given the nature of the claims asserted by Plaintiff herein, a preponderance of evidence
26
    standard is used relative to the Court's analysis:
27
        **"'Preponderance' standard:** Here (as in most cases) the standard of proof at trial is
28      a mere preponderance, the opposing party's evidence need only be such that 'a fair –

minded jury could return a verdict for the (opposing party) on the evidence presented.' *[Anderson v. Liberty Lobby, Inc.* supra, 477 US at 252, 106 S. Ct. at 2512]" (Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure Before Trial,* Section 14:156, p. 1456-1457, The Rutter Group)

In making this decision, the Court is not to weigh the evidence or determine credibility. Instead, the Court's only function is to determine whether the opposing party's evidence, accepting it as true and resolving all disputes in its favor, is sufficient to satisfy the standard of proof established by substantial law.(*Anderson v. Liberty Lobby, Inc.* supra, 477 US at 252, 106 S. Ct. at 2512; see also *Martin v. Toledo Cardiology Consultants, Inc* 548 F 3d 405, 401 (6th Cir. 2008)).

> "**No weighing of evidence**: Rule 56 does *not* permit trial by affidavits. The court's function on a motion for summary judgment is *issue – finding, not issue – resolution. [United States v. One Tintoretto Painting* (2nd Cir. 1982) 691 F2d 603, 606]" (Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure Before Trial,* Section 14:248, p. 14-97, The Rutter Group)

Similarly, "the non- movant need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." (*Waldridge v. American Hoechst Corp.* 24 F 3d 918, 921 (7th Cir. 1994))

Significantly, the evidence presented is to be viewed in favor of the **opposing party**:

> "**Evidence to be viewed in favor of opposing party:** The court must view the evidence presented on the motion in the light most favorable to the *opposing* party:'*The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.' [Anderson v. Liberty Lobby, Inc.* , supra 477 US at 255, 106 S. Ct. at 2513 (emphasis added)] (italics in original)." (Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure Before Trial,* section 14:250, p. 14 – 97; see also *Eastman Kodak Co. v. Image Technical Services, Inc.* (1992) 504 US 451, 456, 112 S. Ct. 2072, 2077).

In fact, at the summary judgment stage, the nonmovant's version of any disputed issues of fact is **presumed** correct (*Eastman Kodak Co. v. Image Technical Services, Inc.* (1992) 504 US 451, 112 S. Ct. 2002; *McSherry v. City of Long Beach* 584 F 3d 1129, 1135 (9th Cir. 2009))

It is important to note that due to the drastic nature of motions for summary judgment, such motion should be granted cautiously:

> •     "**Granted cautiously**: Summary judgment is a drastic remedy and is therefore to be granted cautiously.. . .'" (Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure Before Trial,* Section 14:204, p. 14-88, The Rutter Group)

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

- "Because summary judgment is a 'drastic device,' cutting off a party's right to present its case to a jury, the moving party bears a 'heavy burden' of demonstrating the absence of any triable issues of material fact. [*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.* (2nd Cir. 1999) 182 F 3d 157, 160]" (Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure Before Trial,* Section 14:123, p. 14-41, The Rutter Group)

Finally, with respect to excessive force cases such as this: ". . . the propriety of a particular use of force is **generally an issue for the jury.**"(emphasis added) *(Chew v Gates,* 27 F 3d 1432, 1440 (9th Cir. 1994))

### 1. Genuine issues of material fact exist regarding the liability of the City.

Multiple genuine issues of material fact exist regarding the liability of the City under the *Monell* decision.

Because there is no respondeat superior liability for the City vis-à-vis the acts and omissions of defendant Chesterman, Plaintiff must show that the City itself is responsible for the constitutional deprivation:

"In *Monell v. New York City Dept. of Social Services*, 436 US 658 (1978), we decided that a municipality can be found liable under section 1983 only where the municipality itself caused the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under section 1983. [Citation omitted]." (*City of Canton, Ohio v. Harris,* 498 US 378, 385 (1989)

The primary way by which a plaintiff can accomplish this task is by demonstrating the existence of a **unconstitutional policy, custom or practice:**

"'It is only when the "execution of the government's policy or custom . . . inflicts the injury" that the municipality may be held liable under sec. 1983 [citation].'"*City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

To prevail in a civil rights claim against a local government under *Monell*, a plaintiff must satisfy a three – part test:

(1) the local government official (s) must have intentionally violated the plaintiff's constitutional rights;

(2) the violation must be part of a policy or custom in may not be an isolated incident; and

(3) there must be a link between the specific policy or custom to the plaintiff's injury.(*Monell*, supra 436 U.S. at 690-692.)

///

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

With respect to demonstrating an unconstitutional policy, custom or practice, it is not necessary to show a series of similar acts, but instead showing a long-standing practice or custom is sufficient:

> "Dr. Ulrich is correct that he need not show a series of similar acts to establish municipal liability. Showing a 'long standing practice or custom which constitutes the "standard operating procedure" of the local governmental entity' is one way to establish municipal liability. [Citation]." *(Ulrich v. City and County of San Francisco,* 308 F. 3d 968, 984 (9th Cir. 2002))

At this stage of the litigation, the task of demonstrating a long-standing practice or custom and/or a series of similar acts by Defendants would be difficult, if not impossible in light of Defendants' improper objections and failure to properly respond to discovery in this matter. (This is detailed in the accompanying Rule 56 (d) declaration). In this regard, Defendants were specifically asked in special interrogatories to describe in detail their (1) policy, (2) custom and (3) practice with respect to the following issues:

1. Regarding use of force in connection with mentally ill or disturbed individuals;

2. Regarding use of force generally;

3. Regarding use of deadly force in connection with mentally ill or disturbed individuals;

4. Regarding use of deadly force generally;

5. Regarding approaching and detaining mentally ill or disturbed individuals;

6. Regarding approaching and detaining individuals generally. (See Miller Dec., Exhibit D)

In response to each of these special interrogatories, Defendants simply and improperly referred Plaintiff to "documents previously produced pursuant to FRCP 26." (Miller Dec., Exhibit D) There were absolutely no substantial responses to these special interrogatories, despite Defendants obligation to respond to the specific questions posed and not simply refer to documents which may contain such information.

In addition, Special Interrogatory Nos. 24 and 25 requested information regarding highly relevant prior lawsuits against Defendants regarding use of excessive force against mentally ill and/or disturbed individuals and the shooting of mentally ill and/or disturbed individuals. In response to both of these interrogatories, Defendants objected on the grounds that the interrogatories "seek[s] to invade the privacy of third parties" and "assume facts not in evidence." Such objections are not only

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1  improper, but Defendants' failure to respond in any fashion to these two special interrogatory further

2  thwarts Plaintiffs efforts to demonstrate a custom, policy, or practice.

3      Defendants' responses to interrogatories numbers 24 and 25 were consistent with their

4  responses to certain document requests propounded on defendants, namely numbers 190, 191 and 193

5  which provide:

6  DEMAND FOR INSPECTION NO. 190:

7      All DOCUMENTS (other than those protected by the attorney-client privilege or attorney work
   product doctrine) reflecting, referring or relating to YOUR shooting of mentally ill or disturbed
8  individuals.

9  DEMAND FOR INSPECTION NO. 191:

10      All DOCUMENTS (other than those protected by the attorney client privilege or the attorney
   work product doctrine) reflecting, referring or relating to YOUR killing of mentally ill or disturbed
11  individuals.

12  DEMAND FOR INSPECTION NO. 193:

13      All DOCUMENTS (other than those protected by the attorney client privilege or the attorney
   work product doctrine) reflecting, referring or relating to YOUR tasing of mentally ill or disturbed
14  individuals.

15      In response to these document requests, Defendants objected based on alleged privacy rights

16  of third parties and also on relevancy grounds.  No documents were produced.  (Miller Eec., Exhibit

17  E)

18      In addition to the foregoing, document request numbers 1-34 specifically requested documents

19  concerning Defendants' policies, customs and practices regarding arrests, detention, use of force and

20  use of deadly force.  With respect to the vast majority of these document requests, Defendants objected

21  on a number of grounds and thereafter responded: "see defendants initial disclosure of its "Use of

22  Force" policy pursuant to FRCP 26." Unfortunately, no such "Use of Force" policy was ever produced

23  by Defendants. More significantly, however, Defendants conceded no documents exist relative to the

24  following requests:

25  DEMAND FOR INSPECTION NO. 4:

26      All documents reflecting, referring or relating to your **policy** regarding use of deadly force in
   connection with mentally ill or disturbed individuals. (Emphasis added)

27

28  ///

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

DEMAND FOR INSPECTION NO. 10:

All documents reflecting, referring or relating to your **policy** regarding use of tasers in connection mentally ill or disturbed individuals (Emphasis added)

DEMAND FOR INSPECTION NO. 14: .

All documents reflecting referring or relating to your **custom** regarding use of deadly force in connection with mentally ill or disturbed individuals (Emphasis added)

DEMAND FOR INSPECTION NO. 19.

All documents reflecting, referring, or relating to your **custom** regarding approaching and detaining individuals (Emphasis added)

DEMAND FOR INSPECTION NO. 24

All documents reflecting, referring or relating to your **practice** regarding use of force in connection with mentally ill or disturbed individuals (Emphasis added)

DEMAND FOR INSPECTION NO. 26

All documents reflecting, referring or relating to your **practice** regarding use of deadly force in connection with mentally ill or disturbed individuals (Emphasis added)

DEMAND FOR INSPECTION NO. 30.

All documents reflecting, referring or relating to your **practice** regarding approaching and detaining mentally ill or disturbed individuals. (Emphasis added) (Miller Dec., Exhibit E)

Defendants' evasive discovery responses are significant in that courts recognize discovery is often necessary with respect to the issue of custom and practice:

"However, in this case **discovery** may reveal a pattern of misconduct sufficient to turn such apparently reasonable reliance into deliberate indifference. In that event, liability may fairly be laid at the City's doorstep." (Emphasis added) *Walker v. The City of New York*, 974 F. 2d 293, 301 ( 2nd Cir. 1992)

Based on the foregoing, Plaintiff contends the Court should either deny Defendants' motion due to the lack of discovery and failure to appropriately respond to discovery or at a minimum continue the hearing on this motion so that further discovery, including motions to compel further responses to the interrogatories and document requests as well as depositions, can occur

Despite the foregoing discovery issues, there are various, additional ways a plaintiff may prove the existence of an unconstitutional policy, custom or practice of a municipality for purposes of imposing municipal liability under *Monell*.

///

First, a plaintiff can show a **failure to properly train**.  Under certain circumstances, a municipality can be held liable for failure to properly train its employees. *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). To prevail on a failure to train theory, a plaintiff must prove the inadequacy of training amounted to 'deliberate indifference to the rights of persons with whom the police come into contact.'

In this regard, paragraphs 24, 35, 42, 48 and 54 of the SAC allege failure to properly train.

As stated by the leading case on the issue, *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)

•      "For the reasons stated below, we conclude, as have all the courts of appeals that have address this issue, that there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under section 1983." (Id. at 387)

•      "We hold today that the inadequacy of police training may serve as the basis for a section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." (Id. at 388)

The *Canton* court continued:

•      "It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that, in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, any inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. [Footnote 10]. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)

•      "For example, City policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, [citation], can be said to be 'so obvious' that failure to do so could properly be characterized as 'deliberate indifference' constitutional rights.

It could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)

Other cases have held similarly:

"In *City of Canton v. Harris* 489 U. S. 378 (1989), the Court addressed the dimensions of municipal liability for failure to train or supervise. Harris sued Canton alleging that the City had failed to adequately train its police as to when to summon medical care for an injured detainee. The Supreme Court ruled that a claim of inadequate training will trigger municipal liability only where 'the failure to train amounts to deliberate

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION**
Z:\Blake\Pleadings\Motions\Motion for Summary Judgment\Opp w Tables.wpd

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

indifference to the rights' of those with whom municipal employees will come into contact.

The Court explained that 'deliberate indifference' required that City policymakers make a 'deliberate choice. . . from among various alternatives' not to fully train employees. [Citation]. Such a deliberate choice could be shown where 'in light of the duties assigned to specific officers or employees the need for more different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'[Citation].

The Court offered as an example of deliberate indifference a municipality's failure to train police officers on the proper use of deadly force. The Court noted that 'City policymakers know to a moral certainty that their police officers will be required to arrest a fleeing felons.'[Citation]. Moreover, '[the ] City has armed as officers with firearms, in part to accomplish this task.'[Citation]. In such a situation, 'the need to train officers in the constitutional limitations on the use of deadly force. . . 'can be said to be' 'so obvious that the failure to do so would properly be characterized as deliberate indifference' to constitutional rights. [Citation]."*(Walker v. The City of New York*, 974 F. 2d 293, 297 (2nd Cir. 1992)

As with his attempt to demonstrate a City policy, custom and practice of constitutional violations, Plaintiff was prevented from demonstrating City liability through a failure to train by Defendants' improper objection to discovery requesting this information and their failure to provide meaningful responses to discovery. In this regard, Special Interrogatory Nos. 20 through 23 specifically dealt with training as follows:

SPECIAL INTERROGATORY NO. 20:

Describe in detail the training of YOUR employees practice regarding use of force in connection with mentally ill or disturbed individuals.

SPECIAL INTERROGATORY NO. 21:

Describe in detail  the training of YOUR employees regarding use of deadly force in connection with mentally ill or disturbed individuals.

SPECIAL INTERROGATORY NO. 22:

Describe in detail  the training of YOUR employees regarding use of deadly force.

SPECIAL INTERROGATORY NO. 23:

Describe in detail  the training of YOUR employees regarding approaching and detaining mentally ill or disturbed individuals.  (Miller Dec., Exhibit D)

As previously referenced, Defendants provided no substantive responses to these interrogatories. Instead, Defendants simply and improperly referred Plaintiff to documents allegedly

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1    previously produced.

2          Again, courts recognize the importance of discovery relative to the issue of failure to properly

3    train as a basis of municipal liability:

4          "Walker should be allowed to pursue discovery in order to determine whether there
           was a practice of condoning perjury (evidence perhaps by failure to discipline for
5          perjury) or a pattern of please misconduct sufficient to require the Police Department
           to train and supervise police officers to assure they tell the truth. Accordingly, we
6          reversed the District Court's dismissal of Walker's claims alleging the city's deliberate

7          indifference to the need to train and supervise the police not to commit perjury or assist
           in the conviction of the innocent." *Walker v. The City of New York*, 974 F. 2d 293, 300
8          (2nd Cir. 1992)

9          Similarly, request for production of documents numbers 83 through 85 requested the "training

10   file" for each of the three officers who entered the residence on the day of the incident, namely

11   defendant Chesterman and officers Burger and Tall. In response to each of these requests, Defendants

12   objected, alleging that such training files "are confidential" and also objected based on relevancy.

13   Based on these objections, Defendants produced no such documentation.

14         Finally, Document Request Nos. 35 through 46 requested documents from Defendants

15   regarding training in connection with arrests, detention, use of force and use of deadly force. In

16   response to some of these requests, Defendants referred Plaintiff to four of the eight exhibits they

17   produced as documents pursuant to these document requests, namely numbers 1, 2, 7, 8 (see Miller

18   Dec., Exhibit F). More significantly, however, the documents produced by Defendants reveal the

19   absence of such training. This is particularly case with respect to Decedent, a mentally ill and

20   disturbed individual. In this regard, with respect to Request No. 36 requesting documents concerning:

21   "the training of YOUR employees regarding use of force in connection with mentally ill or disturbed

22   individuals", Defendants produced Exhibit 1, a two-page document dealing with individuals taken into

23   custody pursuant to Welfare and Institutions Code section 5150. The document has nothing to do with

24   the appropriate use of force with mentally ill individuals generally, how to approach and detain them

25   or the use of deadly force.  This is evident by the description of the "purpose" of the General Order

26   which recites:

27   ///

28   ///

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

**"PURPOSE**

The purpose of this order is to establish procedures for handling mentally ill persons taken into custody pursuant to 5150 of the Welfare and Institutions Code (W&I)." (See Miller Dec., Exhibit F)

Similarly, in response to Document Request No. 38 which requests documents concerning "training of YOUR employees regarding the use of deadly force in connection with mentally ill or disturbed individuals", Defendants again referred to Exhibit number 1 and also Exhibits 7 and 8. Interestingly, Exhibits 7 and 8 deal with patrol techniques generally (Exhibit 7) and seminar materials on use of force, patrol techniques and discharge of firearms.  (Exhibit 8)  None of these documents specifically address mentally ill or disturbed individuals.  For example, pages 2-37 of Exhibit 7 dealing with "pedestrian contact' makes no mention of encountering such an individual.  Similarly, none of the documents comprising Exhibit 8 deal in any fashion with mentally ill or disturbed individuals.   These meager documents themselves demonstrate a lack of appropriate training, particularly training relative to mentally ill or disturbed individuals.  The documents themselves therefore create genuine issues of material fact regarding the adequacy of Defendants' training. (Miller Dec., Exhibit F)

A second way a plaintiff can establish municipal liability under the *Monell* doctrine is demonstrating a **failure to supervise.**

It is well-established that a municipality's failure to supervise its employees can also give rise to section 1983 liability in those situations where there is a history of wide – spread abuse." *(Wellington v. Daniels* 717 F 2d 932, 936 (4th Cir. 1983).

Paragraphs 35, 42, 48 and 54 of the SAC allege a failure to properly supervise.

Again, Plaintiff was prevented from making out a *Monell* claim by Defendants' failure to provide meaningful responses to discovery.  Document Requests Nos. 47 through 58 requested documentation concerning Defendants' supervision of its employees regarding use of force, use of deadly force, and the detention of individuals, including mentally ill and/or disturbed individuals. In response to these document requests, Defendants again referred to documents which were purportedly previously produced (namely the alleged "Use of Force" policy) and also referred to Exhibits 1 and 2 to their document production. As described above, Exhibits 1 and 2 have nothing to do with

supervision. Accordingly, the production of these two exhibits, based on their lack of substantive information regarding supervision, creates triable issues of material fact as to whether or not a failure to supervise exists as a basis of liability pursuant to the *Monell* doctrine.

A third way a plaintiff can show municipal liability under *Monell* is the **failure to discipline.** The Ninth Circuit has held that a municipal policy "may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant and municipal officers were not discharged or reprimanded." (*Menotti v. City of Seattle* 409 F 3d 1113, 1147 (9th Cir. 2005)

As stated by the court in *Sarus v. Rotundo*, 831 F 2d 397, 400-401 (2nd Cir. 1987):

"Municipal inactions such as the persistent failure to discipline subordinates, who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*."

Paragraphs 21, 35, 42, 48 and 54 of the FAC alleged such a failure to discipline.

Further, with respect to discovery, Plaintiff inquired into these issues of discipline, but Defendants refused to respond based on improper objections. Document Request Nos. 59 through 70 specifically requested documentation concerning Defendants' discipline of their employees with respect to use of force, use of deadly force, and the detention of individuals, including without limitation mentally ill and/or disturbed individuals. With respect to each one of these document requests, Defendants objected on the grounds of relevancy and refused to produce any documentation. (Miller Dec., Exhibit E)

Similarly, Document Request Nos. 86 through 91 requested documents related to any disciplinary actions taken against the three officers who entered the residence on the day of the incident, namely, defendant Chesterman and officers Tall and Burger. Defendants similarly objected based on relevancy grounds and refused to produce any documentation.  (Miller Dec., Exhibit E)

**2.  Genuine issues of material fact exist regarding the liability of Defendant Chesterman.**

Multiple genuine issues of material fact exist regarding the liability of defendant Chesterman under both the Fourteenth Amendment and the Fourth Amendment.

///

///

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

## A. Fourteenth Amendment

With respect to the Fourteenth Amendment, Plaintiff must demonstrate that the conduct at issue "shocks the conscience" and was intentional and/or reckless.

> "Thus, in a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *(County of Sacramento v. Lewis* 523 US 833, 847 (1998))

The critical analysis relative to the Fourteenth Amendment in this case is whether the facts warrant application of one of two standards concerning violation of the Fourteenth Amendment, namely: the "deliberate indifference" standard or the "purpose to harm" standard:

> "In determining whether excessive force shocks the conscience, the court must first ask 'whether the circumstances are such that actual deliberation [by the officer] is practical.'[Citation]. Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience. [Citation]. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a 'purpose to harm' unrelated to legitimate law enforcement objectives. [Citation]. For example, a purpose to harm might be found where an officer uses force to bully a suspect or 'get even.'[Citation]" (*Wilkinson v. Torres* 610 F 3d 546, 554 (9th Cir. 2010))

In their moving papers, Defendants contend the "purpose to harm" standard should apply. In so arguing, they rely on cases in which officers are either engaged in high-speed car chases or confronted with public gunfights. The distinguishing factual nature of the cases upon which defendants rely strikingly illustrated by the following language taken from the *Moreland v. Los Angeles Metropolitan Police Department* 159 F. 3d 356, 372 (9th Cir. 1998) decision upon which Defendants rely:

> "When Burns and Pope arrived at the Chances Arr Bar, the gunfight in progress threatened the lives of the 50 to 100 people who were trapped in the parking lot. In other words, Burns in Pope were required to 'act decisively', 'without the luxury of a second chance' to address a life – threatening situation."

Further, in the high-speed chase decisions cited by Defendants, those cases involved a suspect **fleeing** custody. We have no such factual situation presented herein. Unlike the facts presented in *Bingue v. Prunchak* 512 F. 3d 1169, 1177 (9th Cir. 2008), there are no allegations or fact to support that Decedent was attempting to flee the scene at the time of his demise:

///

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1   "We agree with the Eighth Circuit and decline to try to draw a distinction between
2   'emergency' 'and 'non— emergency' situations involving high – speed chases aimed
    at apprehending a **fleeing** suspect. We, therefore hold that the *Lewis* standard of 'intent
3   to harm' applies to all high – speed chases." (Emphasis added)

4       Again, this matter did not involve a car chase or a gunfight. It did not involve a fleeing suspect.

5   Instead, deliberation was practical and defendant Chesterman had sufficient time to meaningfully

6   deliberate prior to his actions. He arrived on the scene and spoke with Plaintiff outside of the

7   residence, no exigency existed. He entered the house with Plaintiff who led him to Decedent's

8   bedroom. Accordingly, defendant Chesterman's acts should be judged by the "deliberate indifference"

9   standard. At a minimum, a genuine factual dispute exists relative to this material issue. The situation

10  here presented is more like the pretrial custody situation wherein the "deliberate indifference" standard

11  is employed, not the high speed car chase situation or gunfight:

12      "Thus, attention to the markedly different circumstances of normal pretrial custody and
        high – speed law enforcement chases shows why deliberate indifference that shocks
13      in one case is less egregious in the other (even assuming that it makes sense to speak
        of indifference as deliberate 'in the case of sudden pursuit). As the very term
14      'deliberate indifference' implies, the standard is sensibly employed only when actual
        deliberation is practical [citation], and in the custodial situation of a prison,
15      forethought about an inmate's welfare is not only feasible but obligate obligatory under
        a regime that incapacitates a prisoner to exercise ordinary responsibility for his own
16      welfare. *(County of Sacramento v. Lewis* 523 US 833, 853 (1998))

17      Again, the facts of this case create a genuine issue of material fact as to which of these two

18  standards would apply. This alone precludes granting of summary judgment. The factual nature of

19  such an inquiry is illustrated by the following excerpts:

20      •       "The conscience – shocking concept points clearly away from liability, or
        clearly toward it, only at the ends of the tort law's culpability spectrum: liability for
21      negligently inflicted harm is categorically beneath the constitutional due process
        threshold [citation], while conduct deliberately intended to injure in some way
22      unjustified by any government interest is the sort of official action most likely to rise
        to the conscience – shocking level. Whether that level is reached when culpability falls
23      between negligence and intentional conduct is a matter for closer calls." (*County of
        Sacramento v. Lewis* 523 US 833, 1836 (1998))
24
25      •       "Whether the point of conscience – shocking is reached when injuries are
        produced with culpability falling within the middle range, following from something
26      more than negligence but 'less than intentional conduct, such as recklessness or 'gross
        negligence,' is a matter for closer calls. To be sure, we have expressly recognized the
27      possibility that some official acts in this range may be actionable under the Fourteenth
        amendment, *ibid.*, and our cases have compelled recognition that such conduct is
28      egregious enough to state a substantial due process claim in at least one instance."
        (*County of Sacramento v. Lewis* 523 US 833, 849 (1998))

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1    In fact, courts use a number of factors, all factual in nature, to assist in making this

2 determination under the Fourteenth Amendment:

3       "As with the Fourth Amendment claim, resulting in a substantive due process claim
        requires courts developed several factors focusing on the' reasonableness of the
4       officers' actions given the circumstances. In *Rutherford*, we held 'in determining
        whether the constitutional line has been crossed, a court must look to such factors as
5       the need for the application of force, the relationship between the need and the amount
        of force that was used, the extent of the injury inflicted, and whether force was applied
6       in a good-faith effort to maintain and restore discipline or maliciously and sadistically
        for the very purpose of causing harm." (*Smith v. City of Fontana* 818 F. 2d 1411, 1417
7       (9th Cir. 1987))

8       As discussed below in connection with the Fourth Amendment analysis, the declaration of

9 defendant Chesterman and Plaintiff conflict with respect to the manner in which the incident occurred,

10 creating genuine, triable issues of fact regarding these factors.

11      The existence of multiple triable issues of facts is particularly compelling given that there is

12 both a subjective and objective component to the "deliberate indifference" standard:

13      ". . . the official must both be aware of facts from which the inference can be drawn
        that a substantial risk of serious harm exists, and he must also draw that inference."
14      (*Farmer v. Brennan* 511 US 825, 837 (1994))

15      Finally, additional factual issues are raised due to the definition of "deliberation" as a relates

16 to the "deliberate indifference" standard:

17      "By 'actual deliberation', "we do not mean 'deliberation' in the narrow, technical
        sense in which it has sometimes been used in tailored homicide law [citation] (noting
18      that' deliberation here does not mean that the man slayer must ponder over the killing
        for a long time" '; rather, it may exist and may be entertained while the man slayer is
19      pressing the trigger of the pistol that fired the fatal shot, even if it be only for a moment
        or instant of time.' " (*County of Sacramento v. Lewis* 523 US 833, 852, footnote 11
20      (1998))

21                              **B. Fourth Amendment**

22      With respect to the Fourth Amendment, defendant Chesterman's conduct is viewed under a

23 "reasonableness" standard. The Supreme Court held in *Graham v. Conner* that '*all* claims that law

24 enforcement officers have used excessive force – deadly or not – in the course of the arrest,

25 investigatory stop, or other ''seizure of a free citizen should be analyzed under the Fourth Amendment

26 and its 'reasonableness' standard, rather than under a 'substantial due process' approach."(italics in

27 original) *(Graham v. Connor* 490 U S 386, 395, 109 S. Ct. 1865 (1989) (see also *County of*

28 *Sacramento v. Lewis* 523 US 833, 842-843 (1998)

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

As stated by the court in *Hopkins v. Andaya* 958 F 2d 881, 885 (9ᵗʰ Cir. 1992):

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

\*     \*     \*

In determining whether an officer acted reasonably under the Fourth Amendment, we must consider the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'[Citation]"

As stated by the court in *Wilkinson v. Torres* 610 F 3d 546, 550 (9ᵗʰ Cir. 2010):

"Case law has clearly established that an officer may not use deadly force to apprehend a suspect where the suspect poses no immediate threat to the officer or others. [Citation]."

On the other hand, is not constitutionally unreasonable to prevent escape using deadly force '[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'[Citation]." *Wilkinson v. Torres* 610 F 3d 546, 550 (9ᵗʰ Cir. 2010)

However, this is a factual question, more appropriate for jury determination, not summary judgment:

• "Appellants contend that there is a triable issue of fact as to whether Andaya used unreasonable force against Stancill. The question of reasonableness of force is usually a question of fact for the jury." ( *Hopkins v. Andaya* (9ᵗʰ Cir. 1992) 958 F 2d 881, 885)

• "Whether the use of deadly force is reasonable is highly fact – specific [citation]. . . , But the inquiry is an objective one.. . . "( *Wilkinson,* supra 610 F 3d at 550 (9ᵗʰ Cir.2010))

• "Thus, in both contexts, courts that review deadly force in response to a supposed public safety threat are presented with a 'fact bound morass,' especially when on first glance an officers' use of deadly force appears disproportionate to the nature of the threat [citation]. In the Fourth Amendment context, this requires courts to take into account 'both the nature of the perceived threat in the soundness of the officers basis for making that assessment.' [Citation]." *Porter v Osborn* 546 F. 3d 1131, 1141 (9ᵗʰ Cir. 2008)

In fact, this is similar to the Fourteenth Amendment analysis which is also factually oriented:

"The reasonableness of an officer's use of excessive force pursuant to the Fourth Amendment is a fact – intensive inquiry for the jury, which if raised on summary judgment, must be evaluated in the light most favorable to the victim. [Citation]. Similarly, where the same disputed facts also give rise to both a Fourth Amendment claim and a Fourteenth Amendment 'purpose to harm' claim, material and triable issues

of fact exist as to both. See *Porter v. Osborn*, 546 F. 3d 1131, 1137 (9th Cir. 2008.)" (*Wilkinson v. Torres* 610 F 3d 546, 555 (9th Cir.2010))

Similar to the above described judicial decisions, a leading treaties on the issue also recognizes that "historical facts" which are disputed, can create triable issues of material fact:

> "**Ultimate fact questions**: Ultimate facts are conclusions are characterizations *based on* historical facts: e.g., whether a party was acting in the course and scope of employment, or **was exercising due care**, etc.
>
> If there is any dispute as to the underlying historical facts, summary judgment of course cannot be granted".(italics in original) (emphasis added) (Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure Before Trial,* Section 14:224, p. 14-92, The Rutter Group)

The factual nature of Fourth Amendment claims is also evidenced by the factually driven **elements or factors** the court considers in its evaluation:

> "Because 't [h]e test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,'[citation], however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. [Citation]." (*Graham v. Connor* 490 US 386, 396 (1989))

The factual nature of Fourth Amendment claims is also evidenced by the **type** of evidence typically reviewed by the court:

> "The judge must carefully examine all the evidence in the record, such as medical report, contemporaneous statements by the officer in the available physical evidence, as well as any expert testimony proffered by the plaintiff, to determine whether the officer story is internally consistent inconsistent with other known facts. [Citation]. In other words, the court may not simply accept what may be a self – serving account by the police officer. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably." (*Scott v. Henrich* 39 F. 3d 912, 915 (9th Cir. 1994))

In the present case, multiple genuine issues of material fact or created with respect to the manner in which the incident occurred as well as the motivation and mental state of defendant Chesterman. Such facts, construed most favorably to Plaintiff clearly indicates the "evidence could convince a rational factfinder that [defendant Chesterman] acted unreasonably."

First, it is important to note that Decedent was not resisting arrest, fleeing, nor had he committed any serious crimes. Instead, he was simply in a home, having previously scratched his father (Plaintiff herein) and pulled a guest's hair. These are three of the significant factors courts look

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1   at to determine whether the use of deadly force was appropriate and whether the acts of the officers

2   involved reasonable. (see *Hopkins*, supra 958 F 2d at 885.).

3          Second, there are multiple genuine issues of disputed facts with respect to the most significant

4   issue in this case, namely: how the incident itself occurred. In this regard, the declaration of defendant

5   Chesterman filed in support of the motion directly contrasts the declaration submitted by Plaintiff on

6   a number of significant factual issues. The differences between the declarations clearly create a

7   genuine issue of dispute on a number of material facts relating to a central material fact in this case,

8   i.e., how the incident occurred. The court in *Hopkins v. Andaya* 958 F 2d 881 (9th Cir. 1992), held

9   similarly:

> "In determining the threat Andaya really faced, the jury would be entitled to consider
> the milder version of the altercation contained in the statement Andaya made closer to
> the time of the incident: that he was hit only once or twice with the baton; that he never
> hit his head on the ground; that he never passed out.
>
> Given the milder version of the threat Andaya faced, a jury could reasonably conclude
> that the force used was excessive."(Id. at 886)

14         The same result was reached by the court in *Curnow v. Ridgecrest Police* 92 F 2d 321 (9th Cir.

15  1991), wherein differing factual versions of the event at issue created triable issues of material fact.

16  This was described by the court as follows:

> "Under Taylor's version of the shooting, the police officers could not reasonably have
> believed the use of deadly force was lawful because Curnow did not point the gun at
> the officers and apparently was not facing them when they shot him the first time.
> Thus, viewing the evidence in the light most favorable to the nonmoving party, the
> defendant/appellants are not entitled to qualified immunity." (Id. at 325)

20         With respect to the declarations of Chesterman and Plaintiff filed in connection with this

21  motion, they conflict in numerous material ways including with respect to the following critical facts:

22         -The size of the knife Decedent was holding at the time of his death;

23         -The manner in which Decedent was holding the knife;

24         -The distance between Decedent and defendant Chesterman at the time of the shooting;

25         -Whether Decedent had stopped or was continuing forward at the time he was shot by
        defendant Chesterman;

26
27         -Whether or not Decedent was growling as he approached/walked toward officer Chesterman;

28         -The time that elapsed between officer Chesterman's encounter with Decedent outside of
        decedent's bedroom and tell the time he shot decedent;

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1    -The amount of space officer Chesterman had behind him to continue to back away from
2    Decedent at the time the shots were fired.

3          Notably, not only do the conflicting declarations create triable issues of material fact as in

4    *Hopkins*, supra, so too does the Coroner's Report in this case. The Coroner's Report is attached to the

5    accompanying declaration of John C Miller, Jr. as Exhibit C. The Coroners Report contains

6    information which conflicts with defendant Chesterman's declaration in that it references no wounds

7    on the Decedent's body demonstrating the taser had actually impacted him.  The report recites:

8          "3.  Reported use of an electronic control device (ECD)

9                A.  No wounds consistent with an ECD found."

10   This is in direct contradiction to the contentions contained in Defendants' moving papers herein,

11   which repeatedly recite the taser was used in an attempt to stop Decedent, but was not effective,

12   thereby justifying deadly force:

13         •      "As the decedent would not drop the knife and continue to advance toward
              officer Chesterman, officer Tall shot his taser gun at the decedent. The taser failed to
14            have any noticeable effect on the decedent and he continued to advance toward officer
              Chesterman wielding the knife above his head." (Defendants' memorandum of points
15            and authorities, 3:4-7)

16         •      "Non-deadly force was used first in the form of a taser gun, but the decedent
              was undeterred." (Defendants' memorandum of points and authorities, 6:25-26)
17

18         •      "Non– deadly force was used prior to the discharge of officer Chesterman's
              firearm." (Defendants memorandum of points and authorities, 8:21-22)

19         The Coroner's Report can be considered by this Court for purposes of this motion for summary

20   judgment even assuming arguendo that it is not in a form admissible at trial: "In opposing a summary

21   judgment motion, the nonmoving party need not produce evidence in a form that would be admissible

22   at trial. [Citation omitted]." (*Curnow v. Ridgecrest Police,* supra,  92 F 2d at 323.) In fact, the court

23   in *Hopkins v. Andaya* 958 F 2d 881 (9th Cir. 1992) also considered a Corner's Report, as it conflicted

24   with the factual statements of the moving parties,  creating triable issues of material fact for purposes

25   of summary judgment.

26         In its conclusion with respect to conflicting factual information presented in opposition to the

27   motion for summary judgment, the *Hopkins* court summarized its position with respect to the conflicts

28   creating triable issues of material fact as follows:

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

"While these factual conflicts concerning the sequence of events and the true nature of the threat confronting Andaya might be resolved in Andaya's favor at trial, is neither our job and or the job of the District Court to resolve these conflicts in the evidence on a motion for summary judgment. It is true that only Anday's first- hand testimony was presented. However, circumstantial evidence can speak clearly and often unequivocally; properly construed, it is as objective and reliable as any other evidence. As a great trial lawyer once said, 'We better know there is a fire whence we see smoke rising then we could know it by one or two witnesses swearing to it. The witnesses can commit perjury, but the smoke cannot.' Abraham Lincoln, Unsent Letter to J. R. Underwood and Henry Grider, October 26, 1864,. . . . " (*Hopkins v. Andaya,* supra 958 F 2d at 888.)

The use of circumstantial evidence in defeating summary judgment motions is well-recognized:

**"Circumstantial evidence**: Circumstantial evidence alone may create a genuine issue of material fact, sufficient to defeat a motion for summary judgment *[Cornwell v. Electra Central Credit Union* (9th Cir. 2006) 439 F 3d 1018, 1029-1030)."

(Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure Before Trial,* Section 14:101.5, p. 14-30, The Rutter Group)

Judicial decisions have held similarly. For example in *Desert Palace, Inc. v. Costa* 539 US 90, 100 (2003), the Court noted that in civil litigation generally, circumstantial evidence "may be more certain, satisfying and persuasive than direct evidence."

Related to the disputed material facts concerning how the incident occurred there are also disputed material facts concerning the motivation and/or state of mind of defendant Chesterman. In other words, what was his motivation? Did he indeed perceive Decedent as a serious threat of physical harm to himself or others? The existence of genuine issues of material fact on this issue is demonstrated above by the disparity between the declaration of Plaintiff and defendant Chesterman. Further, it is important to note that the Decedent was frail, thin, and gaunt, measuring approximately 6'3" tall and weighing 133 pounds. This needs to be considered in connection with the fact that there were three officers in the home at the time of the shooting and nearly a dozen outside. These factual issues are of course consistent with the well-recognized judicial principle that with respect to motions for summary judgment, reasonable minds can differ with respect to a person's motive or state of mind. As stated by a leading treaties on the issue:

•      "A person's state of *mind* (motive, intent, knowledge, etc.) may be inferred from his or her conduct. But summary judgment is improper where conflicting inferences can be drawn from such conduct (i.e., where *reasonable minds can disagree*

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1   as to a person's motives, etc.) [See *Braxton-Secret v. A.H. Robins Co*, (9th Cir. 1985)
2   769 F2d 528, 531]." (italics in original)(Schwartzer, Tashima, Wagstaffe, *California
    Practice Guide, Federal Civil Procedure Before Trial,* section 14:254, p. 14-99, The
3   Rutter Group)

4   •       **"Matters decided by jury**: But where the inference to be drawn requires
    'experience with mainsprings of human conduct' and 'reference to the data of practical
    human experience,' the jury must make the determination and summary judgment is
5   improper. [*Núñez v. Superior Oil Co.* (5th Cir. 1978) 572 F2d 1119, 1126]

6   **Application**: The following are ultimate facts for a jury to determine, and therefore
7   *cannot* be resolved on summary judgment:

8   These are cases in which summary judgment is appropriate even if the historical facts
    are *undisputed.*

9   •       Whether parties acted with 'due care'[*Bryant v. Hall* (5th Cir. 1956) 238 F2d
10  73, 77]

                                *       *       *
11

12  •       Issues of *credibility*, including issues of **intent** should be left to the jury.
    (*Harris v. Itzhaki* (9th Cir. 1999) 183 F 3d 1043, 1051.)  (Emphasis added) (italics in
13  original) (Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil
    Procedure Before Trial,* section 14:233 – 14:234.8, p. 14 – 93– 14 – 94, The Rutter
14  Group)

15      Although the issue of motive or intent is often circumstantial, as previously referenced,

16  circumstantial evidence can create triable issues of material fact for purposes of summary judgment.

17  The above described discrepancies in the declarations of Chesterman and Plaintiff create triable issues

18  of fact in this matter regarding why defendant Chesterman acted the way he did and whether or not

19  the use of deadly force was appropriate given the facts with which he was confronted.

20                  **3. Qualified immunity does not protect officer Chesterman.**

21      Qualified immunity does not protect defendant Chesterman.

22      A three prong inquiry is used for qualified immunity analysis:

23      "Given this interpretation, we make three inquiries to determine whether the defense
    of qualified immunity is available to an officer. First, we identify the right which was
24  allegedly violated. Second, we determine whether the law governing the official's
    conduct is clearly enough established to alert a reasonable officer to its constitutional
25  parameters. Third, we consider whether, under the law, a reasonable officer could have
    believed that his conduct was lawful. [Citation]." *Reynolds v. County of San Diego* 84
26  F. 3d 9th 1162, 1167 ( 9th Cir. 1996)

27      Significantly, the analysis of qualified immunity is the same as the "reasonableness" analysis

28  employed with respect to a Fourth Amendment violation:

1  "In Fourth Amendment unreasonable force cases, unlike in other cases, the qualified
   immunity inquiry is the same as the inquiry made on the merits. [ citation]." *Hopkins
2  v. Andaya* (9th Cir. 1992) 958 F 2d 881, 885 fn 3

3  In discussing the issue, a leading case notes the identical nature of the inquiry:

4  "*Graham* sets forth a list of factors relevant to the merits of the constitutional
   excessive force claim, 'requiring careful attention to the facts and circumstances of
5  each particular case, including the severity of the crime at issue, whether the suspect
   poses an immediate threat to the safety of the officers or others, and whether he is
6  actively resisting arrest or attempting to evade arrest by flight.'[Citation]. If an officer
   reasonably, but mistakenly, believed that a suspect was likely to fight back, for
7  instance, the officer would be justified in using more force than in fact was needed.
   The qualified immunity inquiry, on the other hand, has a further dimension. The
8  concern of the immunity inquiry is to acknowledge that reasonable mistakes can be
   made as to the legal constraints on particular police conduct. It is sometimes difficult
9  for an officer to determine how the relevant legal doctrine, here excessive force, will
   apply to the factual situation the officer confronts. An officer might correctly perceive
10 all of the relevant facts but have a mistaken understanding as to whether a particular
   amount of force is legal in the circumstances. If the officer is mistaken as to what the
11 law requires is reasonable, however, the officers are entitled to the immunity defense."
   (*Saucier v. Katz* 533 US 194, 205 (2001))
12

13 Moreover, as with the Fourth Amendment inquiry, issues related to qualified immunity are
14 factual, typically reserved for jury determination:

15 "Further, when qualified immunity is asserted at the pleading stage, the answer to
   whether there was a violation may depend on a kaleidoscope of facts not yet fully
16 developed." *Pearson v. Callahan* 555 US 223, 225 (2009)

17 The dissent in *Reynolds v. County of San Diego* 84 F. 3d 9th 1162, 1171 ( 9th Cir. 1996)
18 noted similarly:

19 "I agree that we should not use the '20/20'vision of hindsight to second-guess the
   actions of police officers when the use deadly force to defend themselves from
20 imminent harm. [Citation]. But this does not mean that a finding of qualified immunity
   is automatic. Rather, courts must assess whether the use of deadly force to effect a
21 seizure was reasonable according to the requirements of the Fourth Amendment.
   [Citation]. Part of this analysis requires us to determine whether the suspect posed 'a
22 threat of serious physical harm either to the officer or to others.'[Citation]. **This
   inquiry is usually a question of fact for the jury**. [Citations]."(emphasis added)
23

24 As set forth above, Defendants failed to provide the requested information in discovery
25 relevant to numerous critical factual issues in this case, including qualified immunity. In addition, as
26 demonstrated herein, numerous genuine issues of material fact exist relative to the "reasonableness"
27 of the acts and omissions of defendant Chesterman on the day of the incident. Such genuine issues of
28 material fact preclude summary adjudication of the issue of qualified immunity.

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1

2

## III.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully request this Court deny Defendants' motion for summary judgment In so ruling, the Court should consider the fact that it has discretion to deny such motions in the interests of justice and fairness:

> "**Discretion to deny summary judgment**: There is no absolute right to a summary judgment in any case. The court has discretion to deny summary judgment where it determines that justice and fairness require a trial on the merits: 'Neither do we suggest that. . . the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.'[*Anderson v. Liberty Lobby, Inc.* (1986) 477 US 242, 106 S. Ct. 2505, 2513-2514; *Irvin v. Griffin Corp.* (11th Cir. 1987) 808 F2d 802, 807]." (Schwartzer, Tashima, Wagstaffe, *California Practice Guide, Federal Civil Procedure Before Trial,* section 14:338, p. 14-115 – 14-116, The Rutter Group)

DATED: February 19, 2014                    **MILLER LAW, INC.**

By: _____

JOHN C. MILLER, JR.
State Bar No. 143323

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION**
Z:\Blake\Pleadings\Motions\Motion for Summary Judgment\Opp w Tables.wpd

**UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA**
**BLAKE v. CITY OF SACRAMENTO, et al.; Case No. 2:12-cv-2061**

## PROOF OF SERVICE

CODE OF CIVIL PROCEDURE
SECTIONS 1013, SUBDIVISION (a) AND 2015.5

I am a citizen of the United States and am employed in the County of Sacramento. I am over the age of 18 years and not a party to the within cause; my business address is Miller Law, Inc.,  49 B Natoma Street, Folsom, CA 95630 (Mailing Address: P.O. Box 700, Folsom, California 95763-0700).

On the date below, I served the within **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION** on the parties in this cause, by placing for collection, process and deposit a true copy thereof enclosed in this action as follows:

### *SEE SERVICE LIST*

☒    **BY MAIL:** By placing a true copy thereof enclosed in a sealed envelope(s) addressed in the service list, and placing each for collection and mailing on that date following the ordinary course of business practices. I am readily familiar with this business's practice for the collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service in Folsom, California, in a sealed envelope with postage fully prepaid.

☐    **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed as above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☒    **BY FACSIMILE:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the person at the fax numbers listed on the service list. The telephone number of the sending facsimile machine was (916) 351-1244. The sending facsimile machine issued a transmission report confirming that the transmission was complete and without error. A copy of that report is attached.

☒    **BY EMAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed in the service list. I did not receive, within a reasonable time after the transmission, any electronic message other than indication that the transmission was unsuccessful.

☐    **PERSONAL SERVICE:** I personally delivered the document(s) listed above to the party(ies) or person(s) listed above and/or authorized to accept service on their behalf.

☒    **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February _19_, 2014 at Folsom, CA

_____
Jeanne Hutton

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION**
Z:\Blake\Pleadings\Motions\Motion for Summary Judgment\Opp w Tables.wpd

1    **UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA**
       **BLAKE v. CITY OF SACRAMENTO, et al.; Case No. 2:12-cv-2061**

2

3                                     **<u>SERVICE LIST</u>**

4    **ATTORNEYS FOR DEFENDANTS CITY OF**
       **SACRAMENTO and RICK BRAZIEL:**

5    James Sanchez, City Attorney
       **Sean D. Richmond, Sr. Deputy City Attorney**

6    CITY OF SACRAMENTO
       915 I Street, Room 4010

7    Sacramento, CA 95814
       PH: (916) 808-5346; FAX: (916) 808-7455

8    Email: srichmond@cityofsacramento.org
       edillard@cityofsacramento.org

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION**
Z:\Blake\Pleadings\Motions\Motion for Summary Judgment\Opp w Tables.wpd

6500213700                                                    P.01/01

T R A N S A C T I O N   R E P O R T   Case 2:12-cv-02061-WBS-KJN   Document 42   Filed 02/19/14   Page 33 of 33
                                    FEB/19/2014/WED 11:26 AM

FAX(TX)

| # | DATE | START T. | RECEIVER | COM.TIME | PAGE | TYPE/NOTE | FILE |
|---|------|----------|----------|----------|------|-----------|------|
| 001 | FEB/19 | 11:20AM | 8087455 | 0:05:50 | 32 | MEMORY   OK   SG3 | 3122 |

1  JOHN C. MILLER, JR., #143323
2  **MILLER LAW, INC.**
   A Professional Law Corporation
   MAILING ADDRESS:
3  Post Office Box 700
   Folsom, California 95763-0700
4  Phone: (916) 351-1200
   Fax: (916) 351-1244
5  Email: jmiller@millerlawinc.com

6  Attorneys for Plaintiff

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10 STEVE BLAKE, individually and as )    CASE NO. 2:12-cv-2061
   Successor-in-Interest to Carl Blake, deceased, )
11                                            )
12                    Plaintiff,              )
                                             )    **PLAINTIFF'S OPPOSITION TO**
13 v.                                        )    **DEFENDANTS' MOTION FOR**
                                             )    **SUMMARY JUDGMENT/SUMMARY**
14 CITY OF SACRAMENTO;                       )    **ADJUDICATION**
   SACRAMENTO POLICE DEPARTMENT; )
15 RICK BRAZIEL, in in his official capacity as)
   chief of police for the City of Sacramento and)
16 the Sacramento Police Department;        )
   DOE OFFICER NUMBER 1, individually and)    **DATE: March 10, 2014**
17 in his official capacity as a police officer for the)    **TIME: 2:00 p.m.**
   City of Sacramento and the Sacramento Police)    **CTRM: 5**
18 Department;                               )
   DOE OFFICER NUMBER 2, individually and)
19 in his official capacity as a police officer for the)
   City of Sacramento and the Sacramento Police)
20 Department;                               )
   DOE OFFICER NUMBER 3, individually and)
21 in his official capacity as a police officer for the)
   City of Sacramento and the Sacramento Police)
22 Department;                               )
   DOE OFFICER NUMBER 4, individually and)
23 in his official capacity as a police officer for the)
   City of Sacramento and the Sacramento Police)
24 Department;                               )
   DOE OFFICER NUMBER 5, individually and)
25 in his official capacity as a police officer for the)
   City of Sacramento and the Sacramento Police)
26 Department;                               )
   DOES 6 – 50, inclusive, individually and in)
   their official capacities as police officers for the)

**MILLER LAW, INC.**
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200